<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| TISH NALLS CASTILLO, | Case No. 2:17-cv-05255 (BRM) (JBC) |
| Plaintiff, | **OPINION** |
| v. | |
| ANTHONY VISO, *et al.*, | |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**[1]

Before the Court are two motions: (1) Defendant Anthony Viso's ("Viso") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 (ECF No. 75); and (2) Defendant County of Hudson's ("Hudson County") (collectively, "Defendants") Motion for Summary Judgment pursuant to Rule 56 (ECF No. 74). Plaintiff Tish Nalls Castillo ("Plaintiff") filed a joint opposition to both of Defendants' motions for summary judgment (ECF Nos. 84, 93[2]), and Defendants each filed their respective replies (ECF Nos. 95, 97). Having reviewed and considered the submissions filed in connection with these two motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below

---

[1] On November 29, 2023, this action was reassigned to the undersigned from The Honorable Kevin McNulty, U.S.D.J. (ECF No. 94.)

[2] ECF No. 84 is Plaintiff's original opposition and ECF No. 93 is Plaintiff's corrected opposition. (*Compare* ECF No. 84, *with* ECF No. 93.) On November 18, 2023, Plaintiff's counsel filed a letter with the Court advising that the original opposition inadvertently used the term "seatbelt" rather than "cell phone" in various places throughout. (ECF No. 86.) The Honorable James B. Clark, U.S.M.J., subsequently ordered Plaintiff to refile the opposition brief with the correct terminology (ECF No. 88), which Plaintiff did (ECF No. 93). For ease of reference, the Court cites to ECF No. 93 herein.

and for good cause having been shown, Hudson County's Motion for Summary Judgment (ECF No. 74) is **GRANTED**, and Viso's Motion for Summary Judgment (ECF No. 75) is **GRANTED**.

## I.    BACKGROUND

### A.  Factual Background[3]

This is a case involving alleged violations of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, the New Jersey Constitution, 42 U.S.C. § 1983, the New Jersey Civil Rights Act of 2004, N.J. Stat. Ann. § 10:6-1 *et seq.* ("NJCRA"), the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 *et seq.* ("NJLAD"), and common law claims of defamation, malicious prosecution, and tortious interference with prospective economic advantage. (*See generally* ECF No. 1 (Compl.); *see also* ECF No. 93-1 (Pl.'s Counterstatement of Undisputed Material Facts); ECF No. 93-3 (Pl.'s Resps. to Hudson County's Statement of Undisputed Material Facts in Supp. of Mot. for Summ. J. & Viso's Statement of Undisputed

---

[3] The background facts are taken from the parties' admitted statements of material fact and accompanying exhibits. The Court deems supported factual contentions to be admitted, unless sufficiently disputed by reference to record evidence, and similarly construes as undisputed all facts in Defendants' respective Statements of Material Fact to which Plaintiff objects without citing to any record evidence. *See* L. Civ. R. 56.1(a); *Ullrich v. U.S. Sec'y of Veterans Affs.*, 457 F. App'x 132, 136–37 (3d Cir. 2012) ("[T]he party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record. . . . A plaintiff's mere belief or contention . . . is not enough to create a dispute of material fact sufficient to survive summary judgment. . . . Federal Rule 56 explicitly requires the party asserting the absence or existence of a genuinely disputed fact to support that assertion by citing to specific parts of the record. A court may consider other materials in the record, but need only consider cited materials and may consider undisputed any fact not properly addressed by the party opposing it." (citations omitted)); *Stouch v. Twp. of Irvington*, Civ. A. No. 03-06048, 2008 WL 2783338, at *2 n.1 (D.N.J. July 16, 2008) ("deem[ing] [d]efendants' uncontested facts as admitted, unless disputed by [p]laintiffs in their brief and supported by the evidence"). Plaintiff here "denies" certain facts without citing to relevant record evidence. (*See generally* ECF No. 93-3.) Although Plaintiff's opposition brief and responses "aim to create the appearance of factual disputes," in many instances, Plaintiff either does not cite to relevant record evidence or the cited evidence does not actually refute the relevant fact(s). *See Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019).

Material Facts in Supp. of Mot. for Summ. J.[4]); ECF No. 95-1 (Hudson County's Resps. to Pl.'s Counterstatement of Undisputed Material Facts in Opp. to Hudson County's Mot. for Summ. J.); ECF No. 97-1 (Viso's Resps. to Pl.'s Counterstatement of Undisputed Material Facts in Opp. to Viso's Mot. for Summ. J.).) Plaintiff is an African American female who was formerly employed by Hudson County as the former Director of the Hudson County Jail. (ECF No. 1 at 2, ¶ 1[5]; ECF No. 93-3 at 1, ¶ 1 (citing ECF No. 1 ¶ 1; ECF No. 74-1, Ex. A ("Pl.'s Dep.") at 21:3-21:11).) Plaintiff worked as the Director of the Hudson County Jail until she voluntarily resigned and retired on November 1, 2016. (ECF No. 93-3 at 4–5, ¶ 19 (citing Pl.'s Dep. at 19:22-21:2, 169:14-169:17).) Hudson County is a public entity doing business at 567 Pavonia Avenue in Jersey City, New Jersey. (ECF No. 1 at 2, ¶ 2; ECF No. 14 (Hudson County's Answer) at 2, ¶ 2.) Viso is a Caucasian male who, at the time of the events alleged in the Complaint, was employed by Hudson County as a Sheriff's Officer. (ECF No. 1 at 2, ¶ 3; ECF No. 16 (Viso's Amended Answer) at 2, ¶ 3; ECF No. 93-3 at 1–2, ¶ 2 (citing ECF No. 1 ¶ 2; ECF No. 74-1, Ex. B ("Viso's Dep.")).) Viso was assigned to a security detail at the Central Judicial Processing Court located at the Hudson County Administration Building in Jersey City, New Jersey. (ECF No. 93-3 at 1–2, ¶ 2 (citing ECF No. 1 ¶ 2; Viso's Dep.); *id.* at 8, ¶ 3 (citing Viso's Dep. at 7:2–7:8).)

This action stems from events that occurred on July 18, 2016, while Plaintiff was employed

---

[4] Because Plaintiff combined her responses to Hudson's County's Statement of Undisputed Material Facts and her separate responses to Viso's Statement of Undisputed Material Facts into the same document (*see* ECF No. 93-3), the Court herein includes both the page number(s) along with the relevant paragraph number(s) in the citations to this document to indicate to which Defendant's statement Plaintiff is responding.

[5] Because Plaintiff did not use continuous numbering for the allegations in her Complaint—for example, there are multiple paragraph 1s in the Complaint (*see* ECF No. 1)—the Court includes both the page number(s) along with the relevant paragraph number(s) for citations to the Complaint herein to specify the allegation(s) to which it is referring.

with Hudson County, and thereafter. (*See generally* ECF Nos. 1, 93-1, 93-3, 95-1, 97-1.) On July 18, 2016, Plaintiff was scheduled to attend a meeting with various Hudson County officials at 10:00 a.m. at the Hudson County Administration Building. (ECF No. 93-3 at 2, ¶ 3 (citing Pl.'s Dep. at 30:13–32:8).) At approximately 10:20 a.m., Plaintiff drove her vehicle into the parking lot in front of the Administration Building. (*Id.* at 8, ¶ 5 (citing Viso's Dep. at 21:7–21:11); *id.* at 2, ¶ 4 (citing Pl.'s Dep. at 58:22–72:6); ECF No. 97-1 ¶ 3 (citing Pl.'s Dep. at 55:9–61:6).) Viso was near the parking lot entrance when Plaintiff arrived and observed her pull into the gated entrance of the parking lot. (ECF No. 93-3 at 2, ¶ 5 (citing Pl.'s Dep. at 63:16–63:22); *id.* at 8, ¶¶ 5, 8 (citing Viso's Dep. at 21:7–21:11, 22:5–23:3).) Plaintiff was running late to her meeting with the Hudson County officials. (ECF No. 93-3 at 8, ¶ 7 (citing Pl.'s Dep. at 237:14–237:19); Pl.'s Dep. at 55:3–55:8.) While in her stopped vehicle waiting for the gate to the parking lot to be opened, she picked up her cell phone and looked at it. (ECF No. 93-3 at 8–9, ¶¶ 8, 11 (citing Viso's Dep. at 22:5–23:3; Pl.'s Dep. at 163:2–163:6, 164:13–164:19).) When the parking lot attendant, Daniel Wenzel, approached Plaintiff at the gated parking lot entrance, he observed that she was on her cell phone. (ECF No. 93-3 at 10, ¶ 12 (citing ECF No. 75-6 ("D. Wenzel's Dep.") at 17:19–17:22).) Viso also saw Plaintiff and made a motion with his hand to his face, simulating using a telephone. (ECF No. 93-3 at 2, ¶ 6 (citing Pl.'s Dep. at 74:25–77:2); *id.* at 10, ¶ 15 (citing Viso's Dep. at 24:13–24:24, Pl.'s Dep. at 76:1–77:2, 79:22–80:5); ECF No. 97-1 ¶ 13.) Plaintiff did not understand this hand gesture, so she rolled down her window to get clarification from Viso as to what he meant. (ECF No. 93-3 at 11, ¶ 16 (citing Pl.'s Dep. at 80:10–80:21).) Viso accused Plaintiff of talking on her cell phone while operating her vehicle. (ECF No. 93-3 at 3, ¶ 8 (citing Pl.'s Dep. at 78:6–78:12).) Plaintiff denied this accusation and stated she was not talking on her cell phone and offered to provide Viso her phone to show she was not on her phone. (ECF No. 93-

3 at 3, ¶ 9 (citing Pl.'s Dep. at 80:15–81:8); ECF No. 97-1 ¶ 16 (citing Viso's Dep. at 58:2).)

Thereafter, a verbal altercation ensued between Viso and Plaintiff. (ECF No. 93-3 at 3, ¶ 10 (citing

Pl.'s Dep. at 89:1–89:3, 269:3–269:4, 286:6–286:9).) While the parties dispute some of the specific

language that was exchanged between Plaintiff and Viso during this altercation,[6] it is undisputed

that they were engaged in a heated verbal dispute. (*See* ECF No. 93-3 at 3, ¶¶ 10–11 (citing Pl.'s

Dep. at 81:11–83:1, 89:1–89:3, 103:20–104:2, 269:3–269:4, 286:6–286:9); *see also id.* at 11, ¶¶

17–19 (citing Pl.'s Dep. at 81:11–81:17, 102:4–102:5, 142:4, 232:14–232:24; ECF No. 75-21

(LeClairRyan Investigation Report)); ECF No. 97-1 ¶¶ 17–20 (citations omitted).) Both Plaintiff's

and Viso's supervisors were called to the scene. (ECF No. 93-3 at 3, ¶ 12 (citing Pl.'s Dep. at

122:20–136:5, 296:7–296:10); *id.* at 13–14, ¶¶ 23, 25–26 (citing ECF No. 75-8 (July 19, 2016

Mem. from Undersheriff B. Lamparello to Sheriff F. Schillari); ECF No. 75-9 (M. Conrad's Dep.)

at 5:5–5:18).) Plaintiff then proceeded to her meeting with the County officials. (ECF No. 93-3 at

3, ¶ 12 (citing Pl.'s Dep. at 122:20–136:5, 296:7–296:10).) When Plaintiff exited the meeting, Viso

issued her a summons and complaint for using her cell phone while operating a vehicle in violation

of N.J. Stat. Ann. § 39:4-97.3. (*Id.* at 16, ¶ 36 (citing Viso's Dep. at 55:10–55:13; ECF No. 75-26

(Compl. & Summons Issued to Pl.).) Viso subsequently prepared an Incident Report detailing the

encounter with Plaintiff. (ECF No. 93-3 at 16, ¶ 37; ECF No. 75-5 (Incident Report).) Prior to the

July 18, 2016 incident, Plaintiff had never had met or had an altercation or incident with Viso. (*Id.*

---

[6] For example, Plaintiff claims Viso called her a "fucking liar," which Viso disputes; and Viso claims Plaintiff called him a "piece of shit" and a "white motherfucker," which Plaintiff disputes, although Plaintiff admits she said "fuck" and called Viso "racist" and a "disrespectful ass" and told him "it was racist officers like him that make the news on a daily basis giving a negative impression of all of us that serve the law enforcement community." (*See* ECF No. 93-3 at 3, ¶¶ 10–11; *id.* at 11, ¶¶ 17, 19; *id.* at 13–15, ¶¶ 25–31; Pl.'s Dep. at 103:20–104:2, 299:20–300:17; ECF No. 97-1 ¶¶ 17, 19, 25, 27, 39, 42–43; Viso's Dep. at 24:25–31:9, 62:2–62:7 (all internal citations omitted).)

at 5, ¶ 24 (citing Pl.'s Dep. at 233:12–233:17); *id.* at 11, ¶ 18 (citing Pl.'s Dep. at 232:14–232:24).) Plaintiff did not have any further contact with Viso after July 18, 2016. (*Id.* at 5, ¶ 25.)

Following the events that occurred on July 18, 2016, Viso filed an internal complaint with Hudson County, alleging that Plaintiff "made hostile and racially charged statements toward him on July 18, 2016." (ECF No. 93-3 at 4, ¶ 14 (citing ECF No. 74-1, Ex. B).) Hudson County subsequently engaged a law firm to conduct an investigation into the incident. (ECF No. 93-3 at 4, ¶ 15 (citing ECF No. 74-1, Ex. C); *id.* at 18, ¶ 44 (citing ECF Nos. 75-20, 75-21).) Following the firm's investigation, the firm provided a report of their findings and conclusions. (ECF No. 75-21.) Among other things, the firm's report reflects its findings that both Plaintiff and Viso acted inappropriately and unprofessionally and that Viso was "overly aggressive" toward Plaintiff. (ECF No. 75-21; ECF No. 93-3 at 4, ¶¶ 16–17 (citing ECF No. 74-1, Ex. C).) The report also reflects the firm's finding that Viso more generally "is overly aggressive in his pursuit of motor vehicle violations" and the firm's recommendation that both Plaintiff and Viso be appropriately disciplined.[7] (ECF No. 75-21 at 11; *see also id.* at 7–12, 37–38.)

On July 28, 2016, ten days after the events on July 18, 2016 occurred, Plaintiff applied for voluntary retirement. (ECF No. 93-3 at 4, ¶ 19 (citing Pl.'s Dep. at 19:22–21:2, 169:14–169:17).) On November 1, 2016, Plaintiff retired and resigned as Director of the Hudson County Jail. (*Id.*)

**B. Procedural History**

On July 18, 2017, Plaintiff filed a Complaint against Defendants, asserting one cause of action against Hudson County—for "negligently or intentionally fail[ing] to take reasonable action

---

[7] Following the firm's investigation: (1) Viso was charged with unprofessional conduct, which he contested and which a hearing officer subsequently dismissed (ECF No. 93-3 at 4, ¶ 16), and (2) Plaintiff was administratively disciplined on October 7, 2016 for her July 18, 2016 conduct toward Viso and for one other unrelated incident, and lost three vacation days as a result (*id.* ¶ 18).

to prevent further misconduct by Defendant Viso" in violation of the NJLAD, resulting in Plaintiff being subjected to a hostile work environment (Count IV)—and five causes of action against Viso—(1) Violations of her Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution, the New Jersey Constitution, and § 1983 including "unreasonable seizure without probable cause," "depriv[ation] of her liberty without due process of law," "cruel and unusual punishment," and denial of "equal protection of the laws, insofar as she was targeted by [Viso] because of her race and gender and subjected to a malicious prosecution" (Count I); (2) Violations of the NJCRA including "unreasonable seizure without probable cause," "depriv[ation] of her liberty without due process of law," "cruel and unusual punishment," and denial of "equal protection of the laws, insofar as she was targeted by [Viso] because of her race and gender" (Count II); (3) Defamation with respect to Viso's statements regarding the July 18, 2016 incident "made maliciously and with intent to destroy Plaintiff's professional reputation and career" (Count III); (4) Malicious Prosecution by prosecuting traffic proceedings against Plaintiff "without basis in fact" and "made solely to harass, injure, and harm Plaintiff" (Count V); and (5) Tortious Interference with Prospective Economic Advantage "by making false statements which will induce prospective law enforcement agencies and security related employers, as well as prospective employers generally not to employ [Plaintiff]" (Count VI).[8] (ECF No. 1.) On October 2, 2017, Viso and Hudson County each filed their respective Answers to Plaintiff's Complaint. (ECF Nos. 13, 14.) On October 18, 2017, Viso filed an Amended Answer. (ECF No. 16.) The parties then

---

[8] Plaintiff does not specifically label her causes of action in her Complaint, nor does she specify the law(s) and/or statutory provision(s) under which she brings her claims, particularly for Counts V and VI, and therefore it is unclear what specific causes of action and violations Plaintiff is asserting. (*See generally* ECF No. 1.) Accordingly, the causes of action listed herein are what the Court understands Plaintiff is asserting against Defendants. To the extent Plaintiff is asserting any other causes of action not listed herein, those causes of action are dismissed for failure to state a claim.

engaged in discovery. Following the close of discovery, Defendants each filed their respective motions for summary judgment. (ECF Nos. 74, 75.) Plaintiff filed a joint opposition to both of Defendants' motions for summary judgment (ECF No. 93), and Defendants each filed their respective replies[9] (ECF Nos. 95, 97).

On November 29, 2023, this action was reassigned to the undersigned from The Honorable Kevin McNulty, U.S.D.J. (ECF No. 94.)

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." L. Civ. R. 56.1(a). A party asserting a genuine dispute of material fact must support the assertion by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A factual dispute "is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and "is material only if it might affect the outcome of the suit under governing

---

[9] On December 14, 2023, counsel for Viso filed an unopposed letter request, requesting the Court's permission to file an overlength reply. (ECF No. 96.) Counsel noted in the letter that Plaintiff's counsel consented to this request. (*Id.*) The Court **GRANTS** Viso's unopposed request to file an overlength reply in support of its summary judgment motion.

law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019) (citations omitted). Irrelevant or unnecessary factual disputes will also not preclude a grant of summary judgment. *See Anderson*, 477 U.S. at 248. Additionally, "mere speculation does not create genuine issues of material fact." *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 215–16 (3d Cir. 2011) (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990)).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a movant adequately supports its summary judgment motion, the burden shifts to the nonmovant to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (quoting *Anderson*, 477 U.S. at 255). In other words, in deciding a party's summary judgment motion, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 255. "Summary judgment is appropriate only when there are no genuine

issues of material fact, drawing all justifiable inferences in favor of the nonmovant." *Adams v. Fayette Home Care & Hospice*, 452 F. App'x 137, 139 (3d Cir. 2011) (citing *Anderson*, 477 U.S. at 248, 255).

If the moving party bears the burden of proof at trial, summary judgment is not appropriate if the evidence is susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999); *see also id.* at 553 n.9 (noting "summary judgment is rarely granted in a plaintiff's favor in cases where the issue is a defendant's racial motivation, such as disparate treatment suits under Title VII or racial discrimination claims under 42 U.S.C. § 1981"). On the other hand, if the non-moving party bears the burden of proof at trial, "summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (alteration in original) (quoting *Celotex Corp.*, 477 U.S. at 322). A "genuine issue as to any material fact" cannot exist if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

## III.   DECISION

Plaintiff brings claims against Defendants alleging: (1) Hudson County violated the NJLAD (Count IV); and (2) Viso violated her constitutional and civil rights under the Fourth, Fifth, and Fourteenth Amendment, the New Jersey Constitution, § 1983, and the NJCRA (Counts

I and II); and (3) Viso is also liable for defamation (Count III), malicious prosecution (Count V), and tortious interference with prospective economic advantage (Count VI).[10] (*See* ECF No. 1.)

The Court first addresses Hudson County's summary judgment motion and then addresses Viso's summary judgment motion and whether he is entitled to immunity.

### A.  Hudson County's Summary Judgment Motion[11]

Hudson County argues the Court should grant its summary judgment motion because the sole claim asserted against it in the Complaint is that Plaintiff was subjected to a hostile work environment based on gender and race, in violation of the NJLAD, which fails as a matter of fact and law. (ECF No. 74-2 at 1.) Hudson County contends that to the extent Plaintiff claims the July 18, 2016 incident forms the basis of her hostile work environment claim, there is no evidence in the record demonstrating that that discrete incident occurred because of Plaintiff's race or gender or that it was sufficiently severe to constitute a hostile work environment in violation of the

---

[10] In her opposition to Defendants' summary judgment motions, however, Plaintiff does not argue or even mention several of these alleged claims. (*See* ECF No. 93.) To the extent Plaintiff does not mention or argue any claims referenced in the Complaint in her summary judgment submissions, the Court considers these claims waived. *See TitleMax of Del., Inc. v. Weissmann*, 24 F.4th 230, 236 n.5 (3d Cir. 2022) (finding a plaintiff did not preserve its due process claim because while it "listed both the Commerce Clause and the Due Process Clause as grounds" for injunctive relief in its amended complaint, it "did not rely on the Due Process Clause in its motion for summary judgment"); *Resol. Tr. Corp. v. Dunamr Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.' There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the compliant but not relied upon in summary judgment are deemed abandoned." (citations omitted)).

[11] The Court does not address whether Hudson County is entitled to any immunity because Hudson County did not argue in its summary judgment motion that it is entitled to any form of immunity (*see* ECF Nos. 74, 95). To be clear, the Court does not find Hudson County is not entitled to immunity but rather, the Court does not address any such arguments herein because Hudson County did not raise any such arguments in its summary judgment papers. The Court instead solely addresses the merits of Hudson County's summary judgment motion.

NJLAD. (*Id.*) Hudson County further asserts that to the extent Plaintiff claims other facts support her hostile work environment claim, "the Complaint is too vague and the record too lacking in substance to state a claim against the County." (*Id.*) Additionally, Hudson County states "Plaintiff failed to provide sufficient evidence or data to suggest that African-Americans and women were exclusively or even primarily targeted by Viso's law enforcement efforts"; rather, "[t]he record reflects merely that Viso was equally aggressive in his pursuit of all drivers—County employee or not—regardless of race or gender." (*Id.* at 6.) Hudson County submits Plaintiff's feelings and speculation that Viso specifically targeted her because of race are insufficient to survive summary judgment. (*Id.* at 7.)

Hudson County also states it is not apparent from the unclear language in the Complaint "whether [Plaintiff] alleges Viso's conduct constituted the hostile work environment, whether the County should be held liable for Viso's conduct, or whether there is an independent factual basis for the County's violation of the [NJLAD]." (*Id.* at 3.) Hudson County also submits Plaintiff's opposition focuses almost exclusively on Viso's conduct and how his conduct constituted a hostile work environment, but contends Plaintiff fails to show why Hudson County should be held liable for Viso's conduct, particularly when employers are not automatically held liable for damages arising from a hostile work environment created by a non-supervisor. (ECF No. 95 at 1–2.) Hudson County further contends "[t]here is no record evidence that [it] knew or should have known of any unlawful harassment attributable to Viso, or that it failed to take effective remedial measures to stop it." (*Id.* at 4.) Hudson County also notes that Plaintiff's arguments as to Hudson County are devoid of any citations to the factual record. (*Id.*; *see also* ECF No. 93-1 at 31–36.)

In opposition, Plaintiff argues this was not just one single incident but rather a series of severe and pervasive incidents including, among other things: (1) "being stopped and detained by

Viso at the arm to the parking lot's gate without probable cause or reasonable suspicion"; (2) being threatened with arrest without probable cause or reasonable suspicion; (3) being served by Viso with a traffic summons and complaint at an administrative meeting with high-level Hudson County officials "to purposefully embarrass [her]"; (4) being subjected to hearing about Viso bragging to others about giving her the traffic citation; and (5) "being subjected to hearing about Viso laughing about her in front of her nephew"; and (6) being called a "fucking liar" and falsely being ascribed the racially offensive comments "white motherfucker" and "white piece of shit" by Viso. (ECF No. 93-1 at 32–36.) Plaintiff contends these actions, taken together, were severe and pervasive enough to constitute a hostile work environment in violation of NJLAD, or, at a minimum, present an issue of material fact preventing summary judgment. (*Id.* at 32–34.) Plaintiff asserts that even if the Court were to conclude that all the events of the July 18, 2016 incident and those thereafter constitute a single occurrence, one single harassing incident can be sufficient for a hostile work environment claim. (*Id.* at 32–33 (citing *Taylor v. Metzer*, 706 A.2d 685, 694–96 (N.J. 1998)).) Plaintiff further states Hudson County "fail[ed] to take immediate and appropriate corrective action by allowing Viso to remain on the job and continue to harass other women and African-Americans" and submits this "is sufficient to state and support a claim under the NJLAD where the County could have controlled Viso." (*Id.* at 33.)

To state a *prima facie* hostile work environment claim under the NJLAD, a plaintiff must show the complained of conduct: "(1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and the working environment is hostile or abusive." *Shepherd v. Hunterdon Dev. Ctr.*, 803 A.2d 611, 625 (N.J. 1993) (citing *Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 453 (N.J. 1993)). "A viable hostile environment claim stems from extremely

insensitive conduct against the protected person so egregious that it alters the conditions of employment and destroys the person's equal opportunity in the workplace." *Jackson v. Gannett Co.*, Civ. A. No. 08-06403, 2011 WL 3362154, at \*5 (D.N.J. Aug. 3, 2011).

The New Jersey Supreme Court adopted the "severe or pervasive" test for NJLAD hostile work environment claims, as part of its comprehensive standard, which "conforms to the standard for establishing workplace racial or gender harassment under federal Title VII law." *Taylor v. Metzger*, 706 A.2d 685, 689 (N.J. 1998) (citations omitted). Therefore, in order for harassment to be cognizable, it must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *West v. Phila. Elec. Co.*, 45 F.3d 744, 753 (3d Cir. 1999) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

"Courts must consider the frequency or severity of the conduct, whether the conduct was physically threatening or humiliating, or merely an offensive utterance and whether the conduct unreasonably interfered with plaintiff's work performance." *Jackson*, 2011 WL 3362154, at \*5; *Godfrey v. Princeton Theological Seminary*, 952 A.2d 1034, 1045 (N.J. 2008)). The focus must be on the harassing conduct itself, "not its effect on the plaintiff or the work environment. That is because neither 'a plaintiff's subjective response' to the harassment, nor a defendant's subjective intent when perpetrating the harassment, is controlling of whether an actionable hostile environment claim exists." *Cutler v. Dorn*, 955 A.2d 917, 931 (N.J. 2008) (citations omitted). To determine whether a work environment is hostile, "a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 168 (3d Cir. 2013) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, (1993)). "In

evaluating a hostile work environment claim under both [Title VII] and the NJLAD, both the Supreme Court and the Third Circuit have been clear that 'offhand comments, and isolated incidents (unless extremely serious)' are not sufficient." *Nuness v. Simon & Schuster, Inc.*, 221 F. Supp. 3d 596, 601 (D.N.J. 2016) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Here, Plaintiff has failed to demonstrate Viso's alleged conduct was severe or pervasive enough to sustain a hostile work environment claim. "In evaluating whether the harassment alleged was sufficiently severe or pervasive to alter the conditions of employment and to create a hostile or intimidating work environment for a female plaintiff, the finder of fact shall consider the question from the perspective of a reasonable woman." *Lehmann*, 626 A.2d at 457–58. The standard is objective rather than subjective because "the purpose of the [NJ]LAD is to eliminate real discrimination and harassment." *Id.* at 458. Considering the totality of the circumstances based on the undisputed facts and supporting evidence in the record, and drawing all justifiable inferences in favor of Plaintiff, a reasonable female could not find one verbal altercation including profanities and being ascribed racially offensive comments, even if sufficient record evidence existed to support these claims, to be severe or pervasive enough to constitute a hostile work environment. *See Kimber-Anderson v. City of Newark*, 502 F. App'x 210, 214 (3d Cir. 2012) (affirming the district court's grant of summary judgment in favor of defendants, finding plaintiff's claims of "a 'sudden increase in workload,'" being called a derogatory name twice, and having "intense animosity" and a strained working relationship with certain employees did not constitute a hostile work environment in violation of NJLAD). Because the hostile work environment test is conjunctive, the Court need not analyze the remaining elements.

Moreover, Plaintiff has failed to provide sufficient evidence showing the same events

would not have occurred but for her protected status as an African American female; indeed, evidence in the record supports that Viso was overly aggressive *in general* in his pursuit of motor vehicle violations, which Plaintiff does not dispute (*see* ECF No. 93-3 at 4, ¶ 16), and therefore Viso was not just overly aggressive with females and/or African Americans (*see* ECF No. 75-21 at 7–11). Plaintiff likewise has failed to produce or point to any evidence in the record demonstrating Hudson County knew or should have known about Viso engaging in unlawful harassment, or that it failed to take appropriate remedial measures to stop any such harassment, prior to the events that occurred between Viso and Plaintiff on July 18, 2016. So, even assuming, *arguendo*, the alleged conduct was sufficient to constitute a hostile work environment in violation of NJLAD, Plaintiff has failed to establish how or why Hudson County should be held liable for Viso's actions. Accordingly, the Court finds Plaintiff has failed to show any genuine dispute of material fact defeating Hudson County's summary judgment motion.[12]

Therefore, Hudson County's Motion for Summary Judgment is **GRANTED**.

---

[12] Moreover, as Hudson County notes, Plaintiff's opposition to Hudson County's summary judgment motion is devoid of any citations to the factual record. (*See* ECF No. 95 at 1; ECF No. 93-1 at 31–36.) Moreover, Plaintiff failed to comply with Local Civil Rule 56.1(a) because in response to Hudson County's Statement of Undisputed Material Facts, Plaintiff denies certain assertions but fails to cite to the record. (*See generally* 93-3 at 1–6; *see also id.* at 2, 5–6, ¶¶ 4, 26–27.) As the party opposing summary judgment, Plaintiff must set forth her responses to Hudson County's statements of material fact and must support any disputed facts with citations to the record. *See Bulloff v. King Aircraft Title, Inc.*, Civ. A. No. 19-18236, 2021 WL 1186822, at *1 (D.N.J. Mar. 30, 2021); *Profeta*, 397 F. Supp. 3d at 625 ("Unsupported allegations . . . or argument alone . . . cannot forestall summary judgment."). Here, Plaintiff fails to dispute the vast majority of Hudson County's assertions—either by admitting the statements or by denying the statement but failing to support that dispute with citations to the record. Accordingly, the Court deems as undisputed each statement of fact Plaintiff disputed without citing to the record or without citing to supporting record evidence. *See id.*; *Lassalle v. Port Auth. of N.Y. & N.J.*, Civ. A. No. 12-02532, 2013 WL 6094339, at *7 (D.N.J. Nov. 19, 2013). Even when the few statements Plaintiff does dispute, she fails to show a genuine dispute of material fact supported by record evidence that would preclude summary judgment in Hudson County's favor.

### B.  Viso's Summary Judgment Motion

Viso argues the Court should grant summary judgment in his favor on all claims asserted against him in the Complaint because there are no material issues of fact that require trial. (*See generally* ECF Nos. 75-28, 97.) Plaintiff contends Viso's motion should be denied because there is a genuine dispute of material fact as to whether Plaintiff uttered the disputed statements and whether Viso maliciously targeted and defamed her. (*See generally* ECF Nos. 84-1, 93-1.)

The Court addresses the parties' summary judgment arguments as to each of Plaintiff's claims in turn and, in connection with these arguments, addresses whether Viso is entitled to immunity on any of Plaintiff's claims.

### 1.  Summary Judgment Is Warranted On Plaintiff's Constitutional and Civil Rights Claims Against Viso

Viso states he understands Plaintiff's claims in Counts I and II of the Complaint as claims of unreasonable seizure without probable cause, in violation of § 1983 and the NJCRA, and argues these claims fail as a matter of law because it is undisputed he had "reasonable suspicion, as well as probable cause, to believe Plaintiff was using her phone while operating a vehicle." (ECF No. 75-28 at 2; *see also id.* at 6–15.) Viso contends the record evidence supports and "Plaintiff herself testified that she had her cell phone in her hand as she entered the parking lot while operating her vehicle." (*Id.* at 7 (citing Pl.'s Dep. at 160:23-161:1).) Viso also submits that because he had probable cause, his actions did not constitute a civil rights violation, and that even if he did not have probable cause, Plaintiff's claims still fail because he is entitled to qualified immunity, which can only be overcome by showing actual malice. (*Id.* at 2, 12–15, 19.) Viso further asserts that even if he acted with malice, he is still entitled to qualified immunity if he acted in an objectively reasonable manner, which he maintains he did. (*Id.* at 14.)

In opposition, Plaintiff argues no probable cause existed for Viso to issue her a ticket for

violating N.J. Stat. Ann. § 39:4-97.3 because that statute requires the person to be operating a *moving* motor vehicle *on a public road or highway* and here Plaintiff was in a stationary vehicle in a parking lot. (ECF No. 93-1 at 12–15.) Plaintiff contends record evidence supports that Plaintiff's vehicle was not moving and that Plaintiff was not using her cell phone at the time of the traffic stop. (*See id.*) Plaintiff also argues Viso is not entitled to qualified immunity because Viso acted with actual malice and his actions were not objectively reasonable. (*Id.* at 15.)

### a.  Eleventh Amendment Immunity

Generally, a suit by private parties seeking to impose a liability, which must be paid from public funds in a state treasury, is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state or by a federal statute. *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). The Eleventh Amendment also bars suits against state officials, in their official capacity. *See Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–68 (1985)), *aff'd*, 502 U.S. 21 (1991). The Eleventh Amendment does not, however, bar suits for damages against state officials in their individual or personal capacity, as such actions seek recovery against the personal assets of the defendant and the state is not the real party in interest. *Melo*, 912 F.2d at 635 (citation omitted). In addition, the Eleventh Amendment does not bar suits against state officials for declaratory or injunctive relief. *See Melo*, 912 F.2d at 635 n.5 (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

Here, Plaintiff seeks damages against Viso in both his official and individual capacity. (*See* ECF No. 1 at 1.) Because the Eleventh Amendment bars suits against state officials in their official capacity for damages, Plaintiff's claims for damages against Viso in his official capacity accordingly fail. Therefore, Viso's summary judgment motion is **GRANTED** as to all of Plaintiff's claims for damages against him in his *official* capacity as barred by Eleventh Amendment

immunity. As to Plaintiff's claims for damages against Viso in his *individual* capacity, Viso can assert a defense of qualified immunity, which the Court will address next.

**b.  Qualified Immunity**

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation omitted). "Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). "Only if the plaintiff carries this initial burden must the defendant then demonstrate that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions." *Id.* "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 577 U.S. at 11. "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 12.

Qualified immunity "interposes a significant hurdle for plaintiffs seeking to recover for asserted violations of civil rights at the hands of law-enforcement officials." *Morillo v. Torres*, 117 A.3d 1206, 1214 (N.J. 2015) (citation omitted). "This exacting standard gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (citation omitted). Qualified immunity will not, however, act as a shield for "the official who knows or should know he is acting outside the law." *Butz v. Economou*, 438 U.S. 478, 506–07 (1978). *See, e.g.*, *Roberson v. Borough of Glassboro*, 570 F. Supp. 3d 221, 232

(D.N.J. 2021) (finding police officers were protected by qualified immunity where the plaintiffs "failed to identify any evidence that [d]efendants were 'incompetent' or 'knowingly violated the law' when bringing Plaintiffs into custody at gunpoint"; and stating that "[a]t worst, [d]efendants made reasonable mistakes 'in circumstances that [were] tense, uncertain, and rapidly evolving' based on the information available to them at the time'" (citations omitted)); *cf. Pomykacz v. Borough of W. Wildwood*, 438 F. Supp. 2d 504, 514–15 (D.N.J. 2006) (finding a police officer was not entitled to qualified immunity nor immunity under the NJTCA where the officer knew he did not have probable cause to arrest the plaintiff "and made deliberate misrepresentations to the judge who issued the warrant in order to effectuate her arrest[,]" and noting the NJTCA "expressly excepts from protection public employees whose acts constitute 'willful misconduct'").

"Until the question of qualified immunity is addressed, a court cannot reach the underlying merits of the case." *Gruenke v. Seip*, 225 F.3d 290, 298–99 (3d Cir. 2000) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 813–20 (1982)). To determine whether Viso is entitled to qualified immunity, the Court must undertake a two-step inquiry to determine the applicability of qualified immunity:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson*, 555 U.S. at 232 (citations omitted). In determining whether a defendant is entitled to qualified immunity, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. If the answer to either question is "no,"

the analysis ends there. *See id.* at 245 (finding that because the unlawfulness of the officers'
conduct was not clearly established, the officers were entitled to qualified immunity, without
having to answer the question of whether the officers violated the plaintiff's constitutional rights).

"As a general matter, the decision to stop an automobile is reasonable where the police
have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517
U.S. 806, 810 (1996). "Probable cause exists whenever reasonably trustworthy information or
circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable
caution to conclude that an offense has been committed by the person being arrested." *United
States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citing *Beck v. Ohio,* 379 U.S. 89, 91 (1964)).
"It requires more than a 'mere suspicion,' but does not require evidence sufficient to prove guilt
beyond a reasonable doubt." *Wilson v. City of Phila.*, 177 F. Supp. 3d 885, 917 (E.D. Pa. 2016)
(quoting *United States v. Glasser*, 750 F.2d 1197, 1205 (3d Cir. 1984)). "A court determining
whether an officer had probable cause considers an objective officer's beliefs rather than the []
officer's state of mind." *Id.* (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

"[A]n officer will be immune from civil liability under § 1983 . . . 'if there were sufficient
objective indicia of probable cause to justify the action taken even if, in fact, probable cause did
not exist.'" *Plummer v. Dep't of Corr., State of N.J.*, 702 A.2d 535, 537 (N.J. Super. Ct. App. Div.
1997) (quoting *McKinney v. E. Orange Mun. Corp.*, 666 A.2d 191, 195 (N.J. Super. Ct. App. Div.
1995)). "The inquiry, therefore, becomes an objective, albeit fact specific, question to be decided
as a matter of law." *Plummer*, 702 A.2d at 537 (citing *Anderson v. Creighton*, 483 U.S. 635, 641
(1987) (recognizing "it is inevitable that law enforcement officials will in some cases reasonably
but mistakenly conclude that probable cause is present, and [the Supreme Court has] indicated that
in such cases those officials—like other officials who act in ways they reasonably believe to be

lawful—should not be held personally liable")).

Here, the Court construes Plaintiff's allegations in Counts I and II of the Complaint as an alleged unreasonable seizure without probable cause in violation of § 1983 and the NJCRA.[13] "To state [] a claim under § 1983, a plaintiff must show that: (1) a Fourth Amendment seizure occurred, and (2) the seizure was made without probable cause." *Winston v. Bauer*, Civ. A. No. 09-00224, 2010 WL 3811314, at *3 (W.D. Pa. Sept. 21, 2010). The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable search and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend IV. As such, "a search or seizure conducted without a warrant or probable cause may form the basis of a § 1983 claim based on the Fourth Amendment." *Castro v. Perth Amboy Police Dept.*, Civ. A. No. 13-03376, 2014 WL 229301, at *2 (D.N.J. Jan. 21, 2014) (citing *Reedy v. Evanson*, 615 F.3d 197 (3d Cir. 2010)). The NJCRA was modeled after § 1983 and therefore courts view claims brought under the NJCRA "through the lens of § 1983." *Monticciolo v. Robertson*, Civ. A. No. 15-08134, 2017 WL 4536119, at *20 (D.N.J. Oct. 11, 2017) (citing *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011)); *Chapman v. N.J.*, Civ. A. No. 08-04130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983.").

Considering the undisputed facts and supporting record evidence the parties submitted in

---

[13] While Plaintiff alleges in Counts I and II of the Complaint other constitutional and civil rights violations including "depriv[ation] of her liberty without due process of law," "cruel and unusual punishment," and denial of "equal protection of the laws, insofar as she was targeted by Viso because of her race and gender" (*see* ECF No. 1), Plaintiff in her opposition does not argue or even mention, nor does she point to supporting evidence of, these other claims (*see* ECF No. 93). Therefore, the Court considers these other claims in Counts I and II of the Complaint to be waived. *See supra* n.9.

connection with Defendants' summary judgment motions, and drawing all justifiable inferences in Plaintiff's favor, the Court finds Plaintiff here has failed to show Viso violated § 1983 or otherwise violated a clearly established statutory or constitutional right because the record evidence, including Plaintiff's own testimony, supports both that (1) Viso had probable cause to issue her a citation for violating N.J. Stat. § 39:4-97.3 because he reasonably believed Plaintiff was using her cell phone while operating her vehicle, and (2) Plaintiff was actually using her cell phone while operating her vehicle. (*See* ECF No. 93-3 at 9–10, ¶¶ 11–15 (citations omitted); Pl.'s Dep. at 76:1-77:2, 79:22-80:5, 160:23-164:19; Viso's Dep. at 22:5-26:19; D. Wenzel's Dep. at 16:8-17:25; M. Conrad's Dep. at 5:5-7:17.) Accordingly, because Viso had probable cause to issue Plaintiff the traffic citation, the Court finds Plaintiff cannot make out a § 1983 claim for unreasonable seizure without probable cause and therefore fails to allege a violation of a clearly established right. Because the Court finds Plaintiff cannot support a claim that Viso violated a clearly established right, the qualified immunity analysis ends there. *See Davila v. City of Camden*, 66 F. Supp. 3d 529, 534 n.3 (D.N.J. 2014) ("Because the Court finds that plaintiff cannot support a claim that defendants violated his constitutional rights, the qualified immunity analysis ends there."); *see also Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 247 (3d Cir. 2016) (agreeing "with the district court's conclusion that qualified immunity depends, in part, on whether a legal violation occurred" and that because "[p]laintiffs have not shown a violation of federal law, [the court] need not reach the issue of qualified immunity"). Even if the Court was to continue the qualified immunity analysis, Viso would likely be immune from suit on Plaintiff's § 1983 and NJCRA claims because Plaintiff has shown no evidence of actual malice to overcome such immunity.

Moreover, while Plaintiff argues in her opposition that Viso did not have probable cause

to issue her a citation for violating N.J. Stat. Ann. § 39:4-97.3, and even assuming, *arguendo*, Viso did not actually have probable cause, Plaintiff does not show how Viso's conduct constitutes an unreasonable seizure in violation of § 1983 and/or the NJCRA, nor does she point to any evidence in the record supporting an unconstitutional seizure. It is not the Court's responsibility to sift through the record to find evidence and make arguments supporting Plaintiff's position. *See DeShields v. Int'l Resort Props. Ltd.*, 463 F. App'x 117, 120 (3d Cir. 2012). To the extent Plaintiff claims Viso's actions constituted another constitutional or civil rights violation, other than a § 1983 or NJCRA violation, the Court finds Plaintiff has abandoned those other claims because she did not address them in her opposition to Defendants' summary judgment motions.[14] Accordingly, the Court finds Plaintiff has failed to show any genuine dispute of material fact preventing summary judgment on her claims in Counts I and II of the Complaint.

Therefore, Viso's Motion for Summary Judgment as to Plaintiff's constitutional and civil rights claims in Counts I and II of the Complaint is **GRANTED**.

### 2. Summary Judgment Is Warranted As To Plaintiff's Defamation Claim Against Viso

Viso argues Plaintiff's alleged defamation claim in Count III of the Complaint fails as a matter of law because: (1) Plaintiff has failed to identify any defamatory statement by Viso; (2) there is no allegation or evidence that he "'reproduced' or did anything more with his allegedly defamatory statements than follow procedure and draft an Incident Report in connection with the [c]omplaint and [s]ummons"; (3) he never made any statements to any news outlets; (4) he has absolute immunity for the statements he wrote in his incident report; and (5) Plaintiff cannot prove his statements about her were false. (ECF No. 75-28 at 2, 15–23; ECF No. 97 at 2–3, 9–13.)

---

[14] *See supra* nn.9, 12.

According to Viso, even if he misstated Plaintiff's exact words and/or purposefully misquoted her (which he maintains he did not), he still has not defamed her because what he wrote was substantively the same as the undisputed statements to which Plaintiff admits and therefore are substantially true and cannot constitute defamation. (ECF No. 97 at 11–13.) Viso also contends he is entitled to absolute immunity—which is "afforded to law enforcement officials in connection with judicial and quasi-judicial proceedings"—from Plaintiff's defamation claim because any statements he may have made regarding Plaintiff were made in conjunction with the summons and complaint he issued her, which initiated a judicial proceeding. (ECF No. 75-28 at 2, 17–19; ECF No. 97 at 9–10.)

In opposition, Plaintiff argues Viso made defamatory statements when he lied to his supervisor, Lieutenant David Alamo, stating she "called him, among other things, 'a white motherfucker' and a 'white piece of shit'" and then memorialized those false statements he attributed to her in his incident report, which were communicated to others, including being published in The Jersey Journal and being covered by other news outlets. (ECF No. 93-1 at 23; *see also id.* at 7–8, 15–26; ECF No. 93-2, Ex. E.) Plaintiff contends she has consistently and vehemently denied calling Defendant either of these terms or any other racially charged statement, which she maintains discovery supports, including her deposition testimony and the County's independent investigation report that concluded it did not find sufficient evidence to support Defendant's allegation that Plaintiff made racially charged statements toward him. (ECF No. 93-1 at 23.) Plaintiff also asserts Viso is not entitled to absolute immunity because his statements were not made in the course of judicial or administrative proceedings as his alleged defamatory statements did not relate to the traffic citation proceedings. (*Id.* at 19–22.) Plaintiff further argues Viso's defamatory statements constitute defamation *per se* because as the Director of the Hudson

County Jail, those racially charged statements falsely attributed to her "were particularly destructive and incompatible with [her] position and certainly disparaged her career" to the point where she felt "compelled to resign because she lost the faith [of the] employees at the facility as well as the inmates." (*Id.* at 25; *see also id.* at 24–26.) Plaintiff argues Viso "purposefully concocted a false narrative designed to portray [her] as a racist." (ECF No. 93-3 at 7.)

"To prove defamation, a plaintiff must establish that the defendant made a defamatory statement of fact concerning the plaintiff that was false and communicated to a person other than the plaintiff." *Myers v. Atl. Health Sys.*, Civ. A. No. 13-04712, 2017 WL 253846, at *8 (D.N.J. Jan. 20, 2017). "A defamatory statement is one that is (1) false and injures another person's reputation, or (2) subjects a person to hatred, contempt or ridicule, or (3) causes others to lose good will or confidence in that person." *Morgan v. Maxwell*, Civ. A. No. A-3157-19, 2021 WL 1605989, at *8 (N.J. Super. Ct. App. Div. Apr. 26, 2021) (citing *Romaine v. Kallinger*, 537 A.2d 284, 287 (N.J. 1988)). "A plaintiff must also establish fault." *Myers*, 2017 WL 253846, at *8 (citing *Govito v. W. Jersey Health Sys., Inc.*, 753 A.2d 716, 722 (N.J. Super. Ct. App. Div. 2000)). "Statements that are substantially true are not defamatory." *Id.* (citing *Taylor v. Amcor Flexibles Inc.*, 669 F. Supp. 2d 501, 513 (D.N.J. 2009)).

"To determine if a statement has a defamatory meaning, 'a court must consider three factors: (1) the content, (2) the verifiability, and (3) the context of the challenged statement.'" *Profeta*, 397 F. Supp. 3d at 651 (quoting *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1113 (N.J. 2009)). "A 'statement's content must be judged not by its literal meaning but by its objective meaning to a reasonable person of ordinary intelligence.'" *Id.* (quoting *McLaughlin v. Rosanio, Bailets & Talamo*, 751 A.2d 1066, 1071 (N.J. Super. Ct. App. Div. 2000)). Truth may be asserted as a defense to a defamation action "even when a statement is not perfectly accurate." *G.D. v.*

*Kenny*, 15 A.3d 300, 310 (N.J. 2011). "The law of defamation 'overlooks minor inaccuracies and concentrates upon substantial truth.'" *Profeta*, 397 F. Supp. 3d at 651 (quoting *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516 (1991)). Additionally, "a deliberate alteration of the words uttered by a plaintiff does not equate with knowledge of falsity . . . unless the alteration results in a material change in the meaning conveyed by the statement." *Masson*, 501 U.S. at 517.

Here, while not clear from the Complaint or Plaintiff's opposition, it appears Plaintiff is alleging Viso made defamatory statements about her when he allegedly told his supervisor that she called him a "white motherfucker" and a "white piece of shit" and memorialized those statements in his incident report, which news outlets subsequently covered and which statements The Jersey Journal published. (*See* ECF No. 93-1 at 7–8, 15–26; ECF No. 93-2, Ex. E.) While the parties dispute the specific words used, the evidence in the record supports that the substance of the statements Viso relayed to his supervisor are substantially true, and therefore, Plaintiff cannot make out a defamation claim. *See Kenny*, 15 A.3d at 310 ("Truth may be asserted as a defense to a defamation action 'even when a statement is not perfectly accurate.'"); *see also Masson*, 501 U.S. at 516–17; *Profeta*, 397 F. Supp. 3d at 651. It is undisputed Plaintiff used the word "fuck," called Viso a "racist" and a "disrespectful ass," and told Viso (a Caucasian man) "it was racist officers like him that make the news on a daily basis giving a negative impression of all of us that serve in the law enforcement community." (*See* ECF No. 93-3 at 3, ¶¶ 10–11; *id.* at 11, ¶¶ 17, 19; *id.* at 13–15, ¶¶ 25–31; Pl.'s Dep. at 103:20–104:2, 299:20–300:17; ECF No. 97-1 ¶¶ 17, 19, 25, 27, 39, 42–43; Viso's Dep. at 24:25–31:9, 62:2–62:7 (all internal citations omitted).) Additionally, Plaintiff does not point to any evidence in the record showing Viso conveyed his statements and/or submitted his report containing his statements to any news media outlet. Because it is undisputed that Plaintiff used profanity and called Viso a racist and compared him to racist police officers,

among other things, Plaintiff's argument about the specific words used is not material on these facts and is insufficient to preclude summary judgment on her defamation claim.

Further, even assuming, *arguendo*, Viso's statements were false, Viso would be entitled to immunity on Plaintiff's defamation claim—either under absolute immunity because the alleged defamatory statements were written in his incident report in connection with a judicial or quasi-judicial proceeding, or under immunity pursuant to the NJTCA because Plaintiff has not shown any actual malice. *See infra* Section III.B.v, III.B.vi. Accordingly, considering the undisputed facts and supporting record evidence the parties submitted in connection with Defendants' summary judgment motions, and drawing all justifiable inferences in Plaintiff's favor, the Court finds Plaintiff has failed to show any genuine dispute of material fact preventing summary judgment on her defamation claim in the Complaint.

Therefore, Viso's Motion for Summary Judgment as to Plaintiff's defamation claim in Count III of the Complaint is **GRANTED**.

### 3. Summary Judgment Is Warranted As to Plaintiff's Malicious Prosecution Claim Against Viso

Viso argues Plaintiff's malicious prosecution claim in Count V of the Complaint fails as a matter of law because he had probable cause to issue Plaintiff a citation for using a cell phone while operating a vehicle, which the record evidence supports. (ECF No. 75-28 at 2–3; *see also id.* at 23–25.) Viso also contends that "to sustain a malicious prosecution claim, Plaintiff must demonstrate that the matter was resolved, on the merits, in her favor[,]" which here she cannot do because the Complaint and Summons was not resolved on the merits but rather was dismissed for failure to prosecute. (*Id.* at 3.) Additionally, Viso asserts he is entitled to qualified immunity and immunity under the NJTCA for this claim. (*Id.* at 25.)

Plaintiff argues Viso had neither probable cause nor reasonable suspicion to issue her the

citation for using a cell phone while operating a vehicle because at the time she was not operating a moving vehicle on a public road or highway. (ECF No. 93-1 at 27.) Plaintiff also submits that a claim does not need to be resolved *on the merits* but rather only has to be terminated in a way that is "not adverse to the plaintiff coupled with additional proof of malice and lack of probable cause." (*Id.* (citing N.J. Mod. Civ. Jury Instructions, Charge 3.12).) Plaintiff states her citation was dismissed for failure to prosecute because Viso did not appear at the hearing and accordingly this constitutes a termination not adverse to her for purposes of raising a malicious prosecution claim. (*Id.*) Additionally, according to Plaintiff, Viso is also not entitled to immunity because she can show actual malice. (*Id.*)

Here, the Court construes Plaintiff's allegations against Viso in Count V of the Complaint as a claim of malicious prosecution.[15] However, because Plaintiff does not specify under which law(s) she is asserting this claim, it is not clear whether Plaintiff is attempting to assert a claim malicious prosecution under § 1983, under New Jersey law, and/or in violation of the Fourth Amendment of the United States Constitution, but her claim fails under both state law and federal law.

In order to sustain a claim for malicious prosecution under New Jersey law, a plaintiff must prove: "(1) that the criminal action was instituted by the defendant against the plaintiff, (2) that is was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." *Epperson v. Wal–Mart Stores, Inc.*, 862 A.2d 1156, 1160 (N.J. Super. Ct. App. Div. 2004) (quoting *Myrick v. Resorts Int'l Casino & Hotel*, 726

---

[15] Among other things, Plaintiff alleges in Count V of the Complaint that Viso "caused a traffic summons to be filed against Plaintiff" and this was done "solely to harass, injure, and harm Plaintiff[,]" "was without basis in fact, was continued because of Viso's false statements," and "was ultimately dismissed" for lack of prosecution. (ECF No. 1 at 7–8 (Count V).)

A.2d 262, 265 (N.J. Super. Ct. App. Div. 1999)). "Each of these elements must be established or the claim must fail." *Id.* (citations omitted). "The essence of an action for malicious prosecution is that the proceeding was instituted without probable cause, that the complaint was actuated by a malicious motive in making the charge." *Earl v. Winne*, 101 A.2d 535, 543 (N.J. 1953) (citation omitted). Probable cause is defined as "reasonable grounds for suspicion supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautions [person] in the belief that the accused is guilty of the offense with which he is charged." *Lind v. Schmid*, 337 A.2d 365, 369 (N.J. 1975) (citation omitted). In a suit for malicious prosecution, courts conduct an objective inquiry as to whether probable cause can be inferred from the facts known to the defendant at the time the charges were initiated. *See Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 642–43 (D.N.J. 2011); *Lind*, 337 A.2d at, 369 ("The plaintiff must demonstrate that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinarily prudent individual in believing that an offense had been committed.").

Similarly, to prevail on a claim for malicious prosecution under § 1983 or in violation of the Fourth Amendment of the United States Constitution, a plaintiff must show:

> (1) the defendants initiated a criminal proceeding;
> (2) the criminal proceeding ended in plaintiff's favor;
> (3) the proceeding was initiated without probable cause;
> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Elfar v. Twp. of Holmdel*, Civ. A. No. 22-05367, 2024 WL 415691, at *5 (D.N.J. Feb. 5, 2024) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)); *Born v. Aberdeen Police Dep't*, Civ. A. No. 13-02963, 2014 WL 2451289, at *7 (quoting *Marasco*, 318 F.3d at 521). "Malicious prosecution is an avowedly disfavored cause of action." *Land v. Helmer*, 843 F. Supp.

2d 547, 550 (D.N.J. 2012) (citing *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626 (D.N.J. 2011)).

Here, as discussed above, the Court has already found that Viso had probable cause to issue the traffic citation to Plaintiff, and Plaintiff has not provided any evidence of actual malice. Therefore, Plaintiff's claim for malicious prosecution fails under both state and federal law. Additionally, it is undisputed that the traffic citation Viso issued to Plaintiff was dismissed. While receiving a traffic citation resulting in costs and time to defend it may be an inconvenience, this does not result in a deprivation of liberty consistent with the concept of a "seizure" necessary to support a claim for malicious prosecution under § 1983 or the Fourth Amendment. "The Third Circuit has explained that 'prosecution without probable cause is not, in and of itself, a constitutional tort. The type of constitutional injury the Fourth Amendment is intended to redress is the deprivation of liberty accompanying prosecution, not prosecution itself.'" *Born*, 2014 WL 2451289, at *7 (quoting *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005)); *see also DiBella*, 407 F.3d at 603 (finding no seizure significant enough to support a malicious prosecution claim where the plaintiffs "were only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services"); *Born*, 2014 WL 2451289, at *7–8 (dismissing plaintiff's § 1983 claim for malicious prosecution, concluding plaintiff's allegations "that several of the [traffic] tickets issued to her were dismissed, and that she has had to attend court proceedings for at least some of these tickets and summons" was not enough to constitute the required "seizure" necessary for such a claim). Accordingly, considering the undisputed facts and supporting record evidence the parties submitted in connection with Defendants' summary judgment motions, and drawing all justifiable inferences in Plaintiff's favor, the Court finds Plaintiff has failed to show any genuine dispute of

material fact preventing summary judgment on her malicious prosecution claim in the Complaint.

Therefore, Viso's Motion for Summary Judgment as to Plaintiff's malicious prosecution claim in Count V of the Complaint is **GRANTED**.

### 4. Summary Judgment Is Warranted As to Plaintiff's Tortious Interference Claim Against Viso

Viso argues Plaintiff's tortious interference claim in Count VI of the Complaint fails as a matter of law because he had probable cause to issue the Complaint and Summons to Plaintiff and is entitled to immunity under the NJTCA. (ECF No. 75-28 at 3, 25–27.) Additionally, Viso contends Plaintiff (1) has not alleged nor adduced any facts showing Viso had malicious intent, and (2) has not alleged nor adduced any facts showing Viso's issuance of the citation to her caused her inability to find employment, particularly given she testified she voluntarily resigned from her job with Hudson County and did not seek out other employment, at least in the couple of years following the events that occurred on July 18, 2016. (*Id.* at 26.) Further, Viso states he is entitled to both qualified immunity and immunity under the NJTCA. (*Id.* at 26–27.)

In opposition, Plaintiff argues she can prove tortious interference with prospective economic advantage because Viso "maliciously reported that [she] called him a 'white motherfucker,'" which "statement was disseminated to the public through various media outlets." (ECF No. 93-1 at 8; *see also id.* at 27–28.) Plaintiff asserts that because of this, she will "never be able to work in law enforcement again" and that she has not received any offers of employment since the incident despite submitting "numerous applications for positions" both in and outside of law enforcement. (*Id.* at 28.) Plaintiff also contends Viso is not entitled to any immunity because he acted with actual malice. (*Id.* at 29.)

The four elements of a claim for tortious interference with prospective economic advantage under New Jersey law are: "(1) a reasonable expectation of economic advantage to plaintiff, (2)

interference done intentionally and with 'malice,' (3) causal connection between the interference and the loss of prospective gain, and (4) actual damages." *Varrallo v. Hammond Inc.* 94 F.3d 842, 848 (3d Cir. 1996) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J. 1989)).

Here, the Court construes Plaintiff's allegations against Viso in Count VI of the Complaint as a claim of tortious interference with prospective economic advantage. The Court finds Plaintiff has not shown, nor does the record evidence support, that Viso acted with any malicious intent, whether in issuing her the citation or in connection with his alleged statements about her. Therefore, because Plaintiff cannot show "interference done intentionally and with 'malice,'" *see id.*, Plaintiff's tortious interference claim fails. Additionally, Plaintiff has not shown any evidence of a causal connection between the events that occurred on July 18, 2016 and her inability to find employment. It is undisputed that Plaintiff applied for voluntary retirement and resigned as Director of the Hudson County Jail. (*See* ECF No. 93-3 at 4–5, ¶ 19 (citing Pl.'s Dep. at 19:22-21:2, 169:14-169:17).) Further, at the time of her deposition in March of 2019, Plaintiff testified that she had not applied for any jobs of any kind, had not made any efforts to find employment, and had prepared a resume but had not given it to anyone. (Pl.'s Dep. at 180:10-180:24.) Accordingly, considering the undisputed facts and supporting record evidence the parties submitted in connection with Defendants' summary judgment motions, and drawing all justifiable inferences in Plaintiff's favor, the Court finds Plaintiff has failed to show any genuine dispute of material fact preventing summary judgment on her tortious interference claim in the Complaint.

Therefore, Viso's Motion for Summary Judgment as to Plaintiff's tortious interference with prospective economic advantage in Count VI of the Complaint is **GRANTED**.

### 5.   Immunity Under the NJTCA

Under the NJTCA, "a public employee is not liable if he acts in good faith in the execution or enforcement of any law." *Melendez-Spencer v. Shack*, Civ. A. No. 12-01925, 2017 WL 1295517, at *8 (D.N.J. Apr. 5, 2017) (quoting N.J. Stat. Ann. § 29:3–3), *aff'd*, 747 F. App'x 910 (3d Cir. 2018). "The public employee is entitled to good faith immunity if he can 'demonstrate "objective reasonableness" or that he behaved with "subjective good faith."'" *Id.* (quoting *Clark v. Twp. of Mt. Laurel*, 815 A.2d 502, 506 (N.J. Super. Ct. App. Div. 2003)). "To overcome the good faith immunity, a plaintiff must show more than ordinary negligence, and must show that the public employee's actions 'involved a crime, actual fraud, actual malice[,] or willful misconduct.'" *Id.* (alteration in original) (citations omitted). Immunity under the NJTCA applies unless "it is established that [the public employee's] conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." N.J. Stat. Ann. § 59:3-14. Accordingly, the NJTCA does not immunize a public employee for conduct that constitutes actual malice. *Id.*

Here, the parties do not argue that Viso's actions constituted a crime, actual fraud, or willful misconduct, and, as discussed above, Plaintiff has not shown any evidence of actual malice that would prevent the application of immunity under the NJTCA. Plaintiff's arguments unsupported by record evidence are insufficient to raise a material dispute of fact and survive summary judgment. *See, e.g.*, *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109–10 (3d Cir. 1985) ("Legal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion."). Therefore, the Court also finds Viso is entitled to immunity under the NJTCA and accordingly grants summary judgment on this additional basis in favor of Viso as to Plaintiff's common law tort claims in the

Complaint (Counts III, V, and VI).

### 6. Absolute Immunity

"[B]oth federal and state law affords police officers absolute immunity in judicial proceedings." *Rohrabacher v. Olivio*, Civ. A. No. 07-01496, 2008 WL 1840769, at *5 (D.N.J. Apr. 23, 2008). In *Erickson v. Marsh & McLennan Company*, "the New Jersey Supreme Court held that 'although defamatory, a statement will not be actionable if it is subject to an absolute or qualified privilege. A statement made in the course of judicial, administrative, or legislative proceedings is absolutely privileged and wholly immune from liability." *Id.* (quoting *Erickson*, 117 N.J. 539, 563 (1990)). "Under New Jersey law, the doctrine of absolute immunity applies to 'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" *Le v. Univ. of Med. & Dentistry*, Civ. A. No. 08-00991, 2009 WL 1209233, at *6 (D.N.J. May 4, 2009) (quoting *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995), *aff'd sub nom.*, 379 F. App'x 171 (3d Cir. 2010)). "The New Jersey Supreme Court stressed that the immunity or privilege 'is not limited to statements made in a courtroom during a trial' but rather 'extends to all statements or communications in connection with the judicial proceeding.'" *Id.* "Whether a defendant is entitled to this privilege is a question of law." *Id.*

Here, the undisputed facts and record evidence support that Viso's alleged defamatory statements were made in connection with his issuing Plaintiff a traffic citation for violating N.J. Stat. Ann. § 39:4-97.3 and subsequently preparing an incident report regarding his encounter with Plaintiff. Accordingly, the Court finds absolute immunity applies because Viso's alleged defamatory statements were made in connection with a judicial or quasi-judicial proceeding. Therefore, the Court also finds Viso is entitled to absolute immunity and accordingly grants

summary judgment on this additional basis in favor of Viso as to Plaintiff's defamation claim in the Complaint (Count III).

**IV.    CONCLUSION**

For the reasons set forth above, Hudson County's Motion for Summary Judgment (ECF No. 74) is **GRANTED**, and Viso's Motion for Summary Judgment (ECF No. 75) is **GRANTED**. An appropriate Order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  July 31, 2024